Thomas, Justice, delivered the opinion of the court: (1) The record in this case discloses the following state of facts, viz.: A. fieri facias issued by the clerk of the circuit court of St. Clair county, and directed to the sheriff of Madison county for execution,'in favor of the appellee and against one James Duncan and one Kescain Ayres, was'levied by the said sheriff on certain goods and chattels in the possession of the said James Duncan, and as his propertjc The appellant claimed the said property, and thereupon a trial of the right of property being had, according to the form of the statute in such case made and provided, and a verdict found for the appellant, the appellee [* 577] took the case by appeal into the circuit court of the said county of Madison, where there was á trial de novo, and verdict and judgment for the appellee. This case now comes by appeal into this court, for the reversal of that judgment. The appellant, on the trial in the court below, claimed the property in controversy by virtue of a mortgage thereon, executed to him by the said James Duncan, dated the 4th day of April, 1842, and purporting to be executed to secure the payment of a certain promissory note, of even date therewith, also executed by the said James Duncan to the said appellant, and payable eighteen months after date. After the reading of the said note and mortgage in evidence, and proving that they were executed at the same time, and referred to each other, the appellant offered to prove by one J. G. Cameron (the subscribing witness to said mortgage), that at the time of the execution of the said note and mortgage, it was agreed between the parties thereto, that the said James Duncan (the mortgagor) was to remain in possession of the said property until the maturity of the said note, and default in the payment thereof; and that he (the said witness) was instructed, in writing the said mortgage, to express such agreement therein, and intended doing so, and inserted the following words for that purpose, viz: “ And until default be made in the payment of the said sum of money, said property to remain and continue in the quiet and peaceable possession of the said goods and chattels, and the full and free enjoyment of the same using the word “property” by mistake for the name'of “James Duncan.” This evidenee, on motion of the appellee’s counsel, was rejected by the court, and thereupon the appellant’s counsel excepted to the opinion of the count. The counsel for the appellant then offered to prove by the same witness, that one “ William E. Starr testified on a former trial, between the said parties, of this cause, that a good and valuable consideration was paid by Letcher to Duncan, at the time of the execution of the said mortgage, and likewise that he (Starr) was agent of said Letcher, at the time of making said mortgage ; and that said Starr is since dead; and that said Starr was cross-examined by Sawyer, now one of the counsel for Norton, here; ” which testimony was objected to by the appellee’s attorney, and rejected by the court; and appellant excepted. Exceptions were also taken by the appellant to divers opinions of the court in rejecting certain depositions taken on behalf of the said appellant; in overruling the appellant’s motion for a continuance, on account of the exclusion of the said depositions ; in giving to the jury divers instructions asked for by the appellee’s counsel; in refusing to give other instructions requested by his, the said appellant’s attorney; and in overruling his, the said appellant’s, motion for a new trial. [* 578] The various orders and opinions of the circuit court, excepted to on the trial, are now assigned for error ; but we deem it unnecessary to go into an investigation of all the various questions sought to be presented for our consideration by the assignment of errors. A very brief examination of several of the errors assigned will suffice to dispose of this case. First, then, in regard to the rejection of the proof offered by the appellant of the evidence given by Starr, the deceased witness, on the former trial of this cause. The proposition was to prove that the witness, since deceased, swore to certain facts specifically stated, and therefore came within the rule requiring the words of the deceased witness to be proven. It was, however, urged, in argument, that the testimony of Starr, that the mortgage was executed for a valuable consideration was immaterial, as the consideration of the said mortgage had not been attacked in evidence by the appellee; but that position is sufficiently contradicted by the fact, that on the application of the appellee’s counsel, the court instructed the jury that “if they believe, from the evidence, that the deed of mortgage was made without any valuable consideration, they were bound to find for the defendant” (the appellee). The court manifestly erred in rejecting the said testimony. Again,, as to the construction put upon the mortgage in question, by the court, and the exclusion of the testimony offered by the appellant, to explain the supposed mistake in its phraseology, without expressing any opinion as to the admissibility of the proposed evidence, in explanation of the said mortgage, we entertain no doubt that the intention of the parties to that instrument, that Duncan (the mortgagor) should remain in possession of the mortgaged goods until default in the payment of his note, was sufficiently expressed by its own terms, to have superseded the necessity of any such proof. To test the correctness of this view of the subject, let the words of the mortgage be referred to. In the condition of that instrument the following language is used, viz: “ And he, the said party of the first part, for himself, his executors, administrators, and assigns, doth covenant and agree to and with the said party of the second part, his executors, administrators, and assigns, that in case default should be made in the payment of the said sum above mentioned, then it shall and may be lawful for, and he, the said party of the first part, doth hereby authorize and empower the said party of the second part, his executors, administrators, and assigns, with the aid and assistance of any person or persons, to enter the dwelling house, store, and other premises, and such other place, or places as the said goods and chattels are, or may be placed in, and take [*579] and carry away the said goods and chattels; and to sell and dispose of the same, for the best price they can obtain; and out of the money arising therefrom, to retain and pay the said sum above mentioned, and all charges touching the same, rendering the overplus (if any) unto him, or to his executors, administrators, or assigns. - And until default be made in the payment of the said sum of money, said property to remain and continue in the quiet and peaceable possession of the said goods and chattels, and the full and free use and enjoyment of the same.” Could any extrinsic evidence be reasonably required to prove that it was the intention of the parlies to the mortgage, in which the foregoing language is used, that the title of the property should be separated from its possession ? Why should the mortgagor authorize the mortgagee, on default of payment of the note of the former, to enter upon and seize the mortgaged property, if at the time of the execution of the mortgage, he (the mortgagee) was intended to and did take possession of it? Such a construction of the mortgage would do violence to its provisions. The mortgage then does contain authority to the mortgagor to retain possession of the property in dispute until the happening of a certain contingency. To have authorized him expressly, in so many words, to do so, could not have more certainly expressed the intention of the parties that he should do so. If it were susceptible of a doubt, it might be otherwise ; but it is not. Then, whether parole evidence was legally admissible, to explain the alleged mistake in the mortgage, or not, the language, in connection with that in which it is supposed to exist, does fully explain it; and the whole instrument, for the correct interpretation of any part of it, must be taken together. In this view of the subject, the court erred in refusing to instruct the jury, on the request of the appellant’s attorney, that “they (the jury) must be satisfied, from the evidence produced on the trial, that the note and mortgage deed were executed with a fraudulent intent, or they must find, a verdict for the claimant (the appellant); for fraud cannot be presumed, but must be proved.” The action of the court in refusing to give that instruction was predicated on the supposition that the retention of the mortgaged property by Duncan (the mortgagor) rendered the transaction fraudulent perse, and therefore not susceptible of explanation by proof of fairness and honesty of purpose on the part of the said mortgagor. This view of the matter was incorrect. The retention of the goods by the mortgagor was consistent with the deed, and, as I have already shown, was authorized by its terms. This case then comes within the decision of this court, in the case of Thornton v. Davenport et al. 1 Scam. 297, and it was consequently competent for the appellant to prove the transactions to be fair and honest. This, as we have seen, he proposed to some extent to do, by proving by legal testi- [* 580] mony, that the mortgage was executed for a valuable consideration, etc., but was prohibited by the court from doing so, If such evidence, offered by him and erroneously excluded by the court, had been admitted, and he had there superadded proof that the debt acknowledged by the note and mortgage of Duncan to be due from the latter to him (the said appellant) was actually and bona fide due, his title to the property in dispute would have been fully established. For these errors, and without any examination of other points raised by the assignment of errors, the judgment will be reversed, and the cause remanded to the circuit court of Madison county, for further proceedings not inconsistent with this opinion. Judgment reversed. Wilson, Chief Justice, did not hear the argument in this cause, and gave no opinion, '